**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Trina Mehl, Jason Olsen, Susan Olsen, and all others similarly situated, | ) ) ) | **ORDER GRANTING DEFENDANTS'** |
| Plaintiffs, | ) | **MOTION TO DISMISS** |
| | ) | |
| vs. | ) ) | |
| Canadian Pacific Railway, Limited and its wholly owned subsidiary Canadian Pacific Railway Company, and Soo Line Railroad Company, d/b/a Canadian Pacific Railway, | ) ) ) ) ) | Case No. 4:02-cv-009 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' Motion to Dismiss filed on August 16, 2005. On October 6, 2005, the Plaintiffs filed their opposition to the motion. The Defendants filed a reply brief on October 21, 2005, and supplemental briefs on December 12 and 21, 2005. The Plaintiffs filed a supplemental response brief on January 13, 2006.[1] For the reasons set forth below, the Court grants the Defendants' motion.

I.    **BACKGROUND**

This matter stems from the derailment of a Canadian Pacific Railway freight train near Minot, North Dakota, on January 18, 2002. Several damaged tanker cars released anhydrous ammonia into the air. The Plaintiffs allege, in part, that a portion of the continuous welded rail (CWR) track failed causing the derailment. On January 25, 2002, the Plaintiffs filed suit on behalf

---

[1] On February 24, 2006, the Plaintiffs filed a supplemental brief which address the three motions pending in this case. To the extent the issue of preemption was addressed, the Court has reviewed and has considered this portion of the brief.

of themselves and a class of similarly situated persons, claiming that the defendant, Canadian Pacific

Railway (CP Rail), was responsible for the personal injuries and property damage suffered because

of the train derailment.  On May 4, 2005, the Court granted, in part, the Plaintiffs' motion for class

certification.  The Plaintiffs' complaint sets forth seven different claims: (1) negligence, (2) private

nuisance, (3) public nuisance, (4) trespass on land, (5) strict liability, (6) intentional infliction of

emotional distress, and (7) negligence per se.  See Second Amended Class Action Complaint and

Demand for Jury Trial (Docket No. 162).


## II.    STANDARD OF REVIEW

The defendant, CP Rail, filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  The standard

for a district court to employ in ruling on a motion to dismiss is well-established.  Crumpley-

Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004).  "A district court must

accept the allegations contained in the complaint as true, and all reasonable inferences from the

complaint must be drawn in favor of the nonmoving party." Id. (citing Hishon v. King & Spalding,

467 U.S. 69, 73 (1984); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)).  "[D]ismissal is

inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief.'"  McCormack v. Citibank, N.A., 979 F.2d 643, 646

(8th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "A motion to dismiss should

be granted 'as a practical matter . . . only in the unusual case in which there is some insuperable bar

to relief.'"  Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing

Frey v. Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (quoting Bramlet v. Wilson, 495 F.2d 714,

716 (8th Cir. 1974))).  It is clear under the Federal Rules that it is not necessary to plead every fact

with formalistic particularity.  <u>BJC Health System v. Columbia Gas. Co.</u>, 348 F.3d 685, 688 (8th Cir.

2003).  "A pleading which sets forth a claim for relief . . . shall contain a short and plain statement

of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).


## III.  <u>LEGAL DISCUSSION</u>

CP Rail contends that the Eighth Circuit's federal preemption precedent dictates dismissal

of the Plaintiffs' claims.  CP Rail cites to the recent Eighth Circuit case of <u>In re Derailment Cases</u>,

416 F.3d 787 (8th Cir. 2005) (hereinafter referred to as the "<u>Scottsbluff</u>" case) to support its

proposition that the Plaintiffs' claims are preempted by federal law which governs railroad safety.


### A.  <u>FEDERAL PREEMPTION DOCTRINE</u>

The Supremacy Clause of the United States Constitution provides that the laws of the United

States "shall be the supreme law of the land."  U.S. Const. Art VI, cl. 2.  It is well-established that

Congress possesses the power to preempt state law.  A federal agency acting within the scope of its

congressionally delegated authority may also preempt state law.  <u>Louisiana Pub. Serv. Comm. v.</u>

<u>Fed. Commc'n Comm.</u>, 476 U.S. 355, 369 (1986).  Thus, state law is preempted when it conflicts

with or frustrates federal law.

The Federal Railroad Safety Act (FRSA) was enacted in 1970 "to promote safety in every

area of railroad operations and reduce railroad-related accidents and incidents."  <u>Norfolk So. Ry. Co.</u>

v. Shanklin, 529 U.S. 344, 347 (2000).[2]  The FRSA gives the Secretary of Transportation broad

powers to prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas

of railroad safety.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 662 (1993).  The FRSA also

includes express saving and preemption clauses:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order -
> (1)    is necessary to eliminate or reduce an essentially local safety or security hazard;
> (2)    is not incompatible with a law, regulation, or order of the United States Government; and
> (3)    does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (2005). When a federal statute contains an express preemption clause, as it does

here, the Court must focus on the plain wording of the clause, since it contains the best evidence of

the scope of Congress' preemptive intent.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664

(1993).

Courts have been faced with interpreting the preemptive force of the Federal Railroad Safety

Act on numerous occasions.  "The language of the FRSA's pre-emption provision dictates that, to

pre-empt state law, the federal regulation must 'cover' the same subject matter, and not merely

'touch upon' or 'relate to that subject matter.'"  Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 351

---

[2]The FRSA was originally codified at 45 U.S.C. §§ 421-447.  It is now codified at 49 U.S.C. §§ 20101-21311.  The Court will refer to the current codification sections.  However, several of the earlier cases reference the previous codification sections.

(2000).  Preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.  Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 352 (2000).

> To prevail on the claim that the regulations have pre-emptive effect, [the plaintiff] must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993) (internal citations omitted).

The determination of whether state law is preempted by federal law does not concern an examination of the compliance with or the adequacy of the federal regulation. See Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 357-58 (2000); see also Kalan Enter. L.L.C. v. BNSF Ry. Co., 05-cv-1326 (JMR/RLE), 2006 WL 348340, *2 (D. Minn. Feb. 14, 2006); Ouellette v. Union Tank Car Co., 902 F. Supp. 5, 10 (D. Mass. 1995) (finding the FRSA's preemption language does not differentiate between instances of compliance and non-compliance).  Nor does it involve an inquiry into the purpose of the regulation. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 675 (1993).  The United States Supreme Court has held that state common law falls within the scope of the broad category of "law, rule, regulation, order, or standard relating to railroad safety."  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993).

Courts have held that several provisions of the FRSA preempt state law.  See e.g., Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 347 (2000) (holding that 49 C.F.R. §§ 646.214(b)(3) and (4) covered the subject matter of the adequacy of warning devices installed with the participation of federal funds); CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 676 (1993) (holding that 49 C.F.R. § 213.9 covered the subject matter of claims alleging excessive speed); CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005) (holding, in the context of a motion for preliminary

injunction, that the safe harbor provision of 49 U.S.C. § 20106 did not apply to the District of Columbia's Terrorism Prevention in Hazardous Materials Transportation Emergency Act of 2005 was preempted by the FRSA); Ouellette v. Union Tank Car Company, 902 F. Supp. 5, 10 (D. Mass. 1995) (finding that 49 C.F.R. § 231.7 covered the subject matter of claims relating to the design and placement of handrails on tank cars leaving no room for a private action based upon state law theories).

On occasion, state courts have found that state-law tort claims were not preempted by the FRSA.  See e.g., Hightower v. Kansas City So. Ry. Co., 70 P. 3d 835, 841 n.10 (Okla. 2003) (declining to overturn a jury verdict on an excessive vegetation claim because of the railroad's failure to object to the claim, but noting that other jurisdictions had held that federal law preempts common law tort claims predicated on a railroad's failure to control vegetation adjacent to railroad crossings so long as the railroad complies with the federal vegetation regulation (49 C.F.R. § 213.37(b))); Clark v. Illinois Central R.R. Co., 794 So.2d 191, 196 (Miss. 2001) (holding an obstructed view claim (excessive vegetation) was not preempted by the FRSA's regulations regarding warning devices at railroad crossings); In re Miamisburg Train Derailment Litig., 626 N.W. 2d 85 (Ohio 1994) (holding the FRSA did not preempt a claim for negligent operation (failure to use reinforcing brake pads) because the regulation was adopted after the manufacture of the railroad car in question).     In addition, several courts have held that the FRSA does not create a private right of action to obtain damages for noncompliance with or a violation of the federal regulations. See Scottsbluff, 416 F.3d 787, 794 (8th Cir. 2005); Ouellette v. Union Tank Car Co., 902 F. Supp. 5, 11 (D. Mass. 1995); Allende v. Soo Line R.R. Co., Civ. No. 03-3093 (ADM/JSM) (D. Minn. Jan. 29, 2004) (Magistrate Judge Janie S. Mayeron's Report and Recommendation at pp.

15-16, n.5, finding the FRSA does not create a private cause of action of behalf of third parties injured by a railroad's alleged violation of the safety rules and regulations promulgated pursuant to the FRSA).

The Eighth Circuit has also addressed the issue of the preemptive effect of the FRSA as to cases asserting failure to warn claims.  In St. Louis Sw. Ry. Co. v. Malone Freight Lines, Inc., 39 F.3d 864, 867 (8th Cir. 1994), the Eighth Circuit ruled a failure to warn claim was not preempted by the FRSA because the devices prescribed in the federally-approved crossing upgrade plan were not installed or operational at the time of the accident.  In Kiemele v. Soo Line R.R. Co., 93 F.3d 472 (8th Cir. 1996), the Eighth Circuit ruled that a negligence claim regarding the reflectivity of crossing warning signs or "crossbucks" was not preempted by the FRSA because a factual question existed as to whether the crossbucks were "operating."  The Eighth Circuit relied upon language from Elrod v. Burlington No. R.R. Co., 68 F.3d 241, 244 (8th Cir. 1995), wherein the Eighth Circuit held "a railroad's common-law duty of care continues until the federally prescribed devices are actually installed and operating."  In Bock v. St. Louis Sw. Ry. Co., 181 F.3d 920, 923 (8th Cir. 1999), the Eighth Circuit re-affirmed its holding in previous cases that once federal funds are expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations.

The Eighth Circuit has also addressed excessive speed claims and held that an excessive speed claim was preempted when the speed of the train in question was above the railroad's self-imposed speed limit and below the FRSA's speed limit.  St. Louis Sw. Ry. Co. v. Pierce, 68 F.3d 276 (8th Cir. 1995).

Most recently, and particularly relevant to the case before the Court, the Eighth Circuit held that negligent inspection claims are preempted by the FRSA's regulations. In re Derailment Cases, 416 F.3d 787, 794 (8th Cir. 2005) (Scottsbluff case).  The Scottsbluff case stemmed from a derailment in Scottsbluff, Nebraska, on November 4, 2000.  Eighteen cars from an 84-car freight train derailed and leaked benzene and other hazardous chemicals into the air and ground. Approximately 1,100 Scottsbluff residents were evacuated.  An investigation into the derailment concluded that the accident was the result of a problem between the coupler that connected two of the railroad cars.  It was undisputed that the federally-mandated inspections occurred two days prior to the derailment.  The plaintiffs in the Scottsbluff case filed suit alleging negligence, negligence per se, and strict liability.  The district court granted summary judgment finding that the negligence claims were preempted by the FRSA and that the negligence per se and strict liability claims were not recognized by Nebraska law.  The Eighth Circuit affirmed the summary judgment ruling.

In Scottsbluff, the Eighth Circuit began its preemption analysis by looking "to the extent to which the regulations adopted pursuant to the FRSA address freight car inspections."  416 F.3d 787,793.  The Eighth Circuit noted that the FRSA has adopted regulations that required (1) inspection of freight cars at each location where they are placed in a train, (2) designation of inspectors that have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance, and (3) a railroad may not place or continue in service a car that, among other things, has a defective coupler or a defective draft key retainer assembly.  Id. citing 49 C.F.R. §§ 215.13, 215.11, 213.123, 215.127.  The Scottsbluff plaintiffs argued that their negligent inspection claims were not preempted because the federal regulations did not specify the manner in which freight car inspections must be accomplished.  The Eighth Circuit reasoned:

[A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter.  Cf. CSX Trans. Inc. v. Williams, 406 F.3d 667, 672 (D.C. Cir. 2005) ("The FRSA preemption provision . . . authorized the court only to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the efficacy of the . . . measures based on the agency's expertise.").  It is clear that the FRA's regulations are intended to prevent negligent inspection by setting forth minimum qualifications for inspectors, specifying certain aspects of freight cars that must be inspected, providing agency monitoring of the inspectors, and establishing a civil enforcement regime.  These intentions are buttressed by the FRA's inspection manual for federal and state inspectors.  Further, there is no indication that the FRA meant to leave open a state tort cause of action to deter negligent inspection.  Cf. Chapman, 390 F.3d at 627 (finding no preemption when the regulations at issue "specifically contemplate the existence of a common-law cause of action for negligence").  Accordingly, we conclude that Plaintiffs' inspection claims are preempted by the FRA's regulations.

Id. at 794 (internal footnotes omitted).

The Defendants also cite to Mayor & City Council of Baltimore, et al. v. CSX Transp., Inc., 404 F. Supp. 2d 869 (D. Md. 2005) (hereinafter referred to as the "Baltimore" case), in support of their proposition that the Plaintiffs' negligent inspection claims are preempted by federal law.  In the Baltimore case, the City of Baltimore sought to recover millions of dollars in damages it allegedly suffered as the result of unlawful conduct and negligence of the defendants in connection with the derailment of a train in the Howard Street Tunnel in the City of Baltimore on July 18, 2001. The derailment resulted in the puncturing of a rail car which then leaked tripropylene, a petroleum-based chemical.  The tripropylene subsequently ignited and a resulting fire lasted five days.  The City of Baltimore asserted that the failure of the defendants to inspect the railroad car that was punctured was in contravention of established federal regulations[3] that govern responsibilities with regard to maintenance of railroad cars.

---

[3]The regulations at issue in the Baltimore case were regulations issued under the Hazardous Materials Transportation Act.  See 49 C.F.R. §§ 179-180.

The federal district court in Baltimore concluded that negligence claims advanced by the City on the basis of inspection and maintenance of railcars were preempted by regulations issued under the FRSA and the Hazardous Materials Transportation Act (HMTA). In reaching this conclusion, the Baltimore court cited, as persuasive, the Eighth Circuit case of In re Derailment Cases, 416 F.3d 787, 793 (8th Cir. 2005). The Baltimore court noted:

> In a thorough analysis of the Supreme Court opinion in Easterwood and its progeny, the Eighth Circuit Court of Appeals noted that regulations issued under the FRSA established a "national railroad safety program." In holding that the plaintiffs' negligence inspection claims were preempted by the federal regulations, the Eighth Circuit Court of Appeals also noted that "there is no indication that the [Federal Railroad Administration] meant to leave open a state tort cause of action to deter negligent inspection."

Baltimore, 404 F. Supp. 2d 869 (D. Md. 2005). In rejecting the City of Baltimore's claims of negligent inspection, the federal district court held that

> even if the City's claim is properly stated as . . . [a] failure to inspect at all, it remains subject to the preemption analysis that this Court is required to perform under Easterwood. That analysis turns on whether regulations issued under the FRSA and HMTA cover or substantially subsume the subject matter of the City's negligence claims, whether those claims are framed as failure to negligently inspect or failure to inspect at all.

Baltimore, 404 F. Supp. 2d 869, 877 (D. Md. 2005).

Another recent federal case in Minnesota issued on February 14, 2006, has cited to the Scottsbluff decision with approval. In Kalan Enter., LLC v. BNSF Ry. Co., 05-cv-1326 (JMR/RLE), 2006 WL 348340 (D. Minn. Feb. 14, 2006), the United States District Court for the District of Minnesota found that claims arising out of a train derailment in Perham, Minnesota, were preempted by the FRSA. In Kalan Enterprises, a freight train operated by the defendant derailed, causing a railcar to eject. The railcar demolished a warehouse occupied by the plaintiff's business. The post-

crash investigation revealed that the derailment was most likely caused by a mechanical failure (a missing cross key in the car's B-end coupler).

The plaintiff alleged several causes of action including (1) violations of federal rail safety standards (49 C.F.R. §§ 215, 232, 232.407, and 232.409); (2) negligent operation of the train at an unsafe speed; (3) negligent application of the train's emergency brakes; (4) improper "make up" and placement of the train's railcars; (5) failure to inspect; (6) movement of defective railcars in violation of the Association of American Railroad standards; (7) other acts of negligence, and (8) res ipsa loquitur.

The Minnesota federal district court rejected the plaintiff's assertions and found that all of the claims were preempted by the Federal Railroad Safety Act.

> Plaintiff asks this Court to find that, for BNSF to invoke the FRSA's preemption, BNSF must not only prove that the regulations cover the subject matter of plaintiff's claims, but also its compliance with those regulations. The Court declines this invitation. To do so would turn Congress's preemption on its head, and eviscerate its effect. Plaintiff essentially asks the Court to rule that only a perfect railroad is covered by the FRSA. A railway which erred would, perforce, be denied FRSA preemption. This option would certainly "protect" perfection, but any railroad experiencing problems would be subject to multiple levels, kinds, and styles of state regulations – which is exactly what Congress sought to preempt within the ambit of the prescribed regulations. The Court rejects plaintiff's "compliance" theory of preemption. Neither the United States Supreme Court, nor the Eighth Circuit Court of Appeals require railroads to prove FRA compliance before allowing state law preemption. Both Courts deem coverage, rather than compliance, to be preemption's touchstone.

Kalan Enter., LLC v. BNSF Ry. Co., 05-cv-1326 (JMR/RLE), 2006 WL 348340, *2 (D. Minn. Feb. 14, 2006)(internal citations and footnote omitted).

The federal district court in Kalan Enterprises discussed each type of claim raised by the plaintiff and found each to be preempted. The court in Kalan Enterprises found that by virtue of their reference to federal regulations, claims alleging violations of identified FRSA regulations were

preempted.  The court also found that excessive speed claims were preempted by 49 C.F.R. section 203.9 which "establishes maximum train speeds."  As to claims of negligence in applying the train's emergency brakes, the court found such claims were preempted by 49 C.F.R. section 232, which prescribes safety standards for freight and other non-passenger train brake systems and equipment and section 232.103(i), which covers emergency application of brakes.  The federal court in Minnesota concluded that claims of negligence in "making-up" the train and placement of cars were simply recharacterizations of the negligent braking claims.  The court further found that claims asserting violations of the Rules of the Association of American Railroad's Field Manual were also preempted.  The court cited to the Scottsbluff decision in finding that claims regarding train inspections were preempted and found such claims fell "squarely in the midst of multiple FRA regulations."  The court held that the claim of negligent railcar movement was preempted by 49 C.F.R. section 215.  The court also held that the "catch-all" negligence claim was preempted because the plaintiff failed to show that any of its "undiscovered claims lie beyond the ambit of the FRSA's broad regulatory support system."  Finally, the court found that the plaintiff's res ipsa loquitur claims were "merely negligence in Latin clothing" and were preempted.

The Court is aware of other federal district courts in the Eighth Circuit which have reached a contrary result.  See Sheppard v. Union Pacific Railroad Co., 357 F.Supp.2d 1180, 1187 (E.D.Mo. 2005), McClure v. Burlington N. Santa Fe Ry. Co., 2005 WL 174877 (D.Neb. Jan. 26, 2005).  However, these cases were decided prior to the Scottsbluff case issued by the Eighth Circuit on August 2, 2005.

**B.**      **OTHER LITIGATION ARISING OUT OF THE MINOT DERAILMENT**

Not surprisingly, the Minot derailment has prompted several other lawsuits.  Most of these

suits are venued in Minnesota state district court.  Both the Minnesota federal district court and the

Minnesota state district court have had an occasion to address the issue of preemption within the

context of these other lawsuits arising out of the Minot derailment.  The Court has carefully

reviewed each of these decisions and finds a summary of the decisions is helpful to understanding

the procedural and jurisdictional differences in each case.

On January 29, 2004, the United States District Court for the District of Minnesota addressed

the issue of preemption in the context of a motion to remand.  See Allende v. Soo Line R.R. Co.,

Civ. No. 03-3093 (ADM/JSM) (D. Minn. Jan. 29, 2004).  The Allende case was originally filed in

Minnesota state district court.  The action was removed by the defendants, and the Allendes filed

a motion to remand the case back to state court.  The Minnesota federal district court granted the

motion to remand.  In its response to the motion to remand, the defendants argued that the Allendes'

state law claims for negligence were completely preempted by the FRSA and the Interstate

Commerce Commission Termination Act (ICCTA).  The Allendes asserted that neither the FRSA

nor the ICCTA completely preempted the action because neither the FRSA nor the ICCTA provided

injured third parties with a cause of action that replaced common law negligence claim for personal

injuries.  The Minnesota federal district court found that the plaintiffs' claims were not preempted,

but specifically noted that the issue of whether complete preemption existed for jurisdictional

purposes is a separate and distinct inquiry from the issue of whether a preemption defense could be

established.  See Allende v. Soo Line R.R. Co., Civ. No. 03-3093 (ADM/JSM)  (D. Minn. Jan. 29,

2004) (Magistrate Judge Janie S. Mayeron's Report and Recommendation, pp. 15-16, n.5).  The

Minnesota federal district court declined to discuss the issue of a federal preemption defense because that issue was not before it.

In the current case, the Court is faced with precisely the issue the Minnesota federal district court declined to address in Allende. Thus, the ruling of the Minnesota federal district court, while instructive as to jurisdictional issues, does not provide guidance as to the issue of a preemptive defense. The Court also notes that the motion to remand in Allende was ruled upon prior to the Eighth Circuit's landmark decision in the Scottsbluff case, which was issued on August 2, 2005. As a result, the Court finds that the January 2004 ruling in Allende is not persuasive on the issues before this Court.

In yet another companion case arising out of the Minot derailment, a Minnesota state district court had occasion to rule on the issue of preemption. See In re: The Soo Line Co. Derailment of January 18, 2002 in Minot N.D., File No. MC 04-007726 (Fourth Judicial District Dec. 19, 2005). The Minnesota state district court case resulted from the remand following the ruling in the related case of Allende. Upon remand, the defendants' filed a motion to dismiss asserting that the FRSA and the Hazardous Material Transportation Act (HTMA) preempted the plaintiffs' negligence claims. The Minnesota state district court divided the Plaintiffs' claims into four categories: Category I – claims alleging negligent inspection; Category II – claims alleging violations of specific regulations; Category III – claim alleging violations of "general" regulations; and Category IV – claims unrelated to a particular regulation.[4]

---

[4]The complaints filed in Minnesota state district court allege different causes of action than the complaint in the case before this Court. As an example, in the Grabinger complaint, the plaintiffs alleged seventeen separate counts, including: (1) negligence on behalf of the railroad including allegations of (a) failure to inspect, maintain, replace, and repair the tracks, (b) increasing the load of the railcars, (c) increasing the speed to 41 miles per hour, (d) failing to update particular sections of track to "signal territory," (e) failure to have adequate maintenance crews, and (f) allowing defective track to be located close to a heavily populated area; (2) negligence on behalf of the

In analyzing the preemption issues, the Minnesota state district court stated that "in each case the issue of preemption is analyzed by comparing the language of a specific regulation to specific facts in the given case, and further by examining the regulation itself to establish whether the intent was to 'occupy the field.'"   See In re: The Soo Line Co. Derailment of January 18, 2002 in Minot N.D., File No. MC 04-007726 (Fourth Judicial District Dec. 19, 2005) Order on Motion to Dismiss and Motion for Summary Judgment on the Issue of Federal Preemption, p. 11.  The Minnesota state district court found that the only claims which were preempted by the FRSA were those claims alleging negligent inspection (Category I).   The Minnesota state district court relied upon the decision in Easterwood and Scottsbluff in reaching its conclusion that the negligent inspection claims were preempted.

As to the other claims, the Minnesota state district court found that the Category II and III claims alleging violations of specific or general regulations were not preempted.  In reaching this conclusion, it appears the Minnesota state district court placed great weight on a recent Minnesota Supreme Court decision in Engvall v. Soo Line R.R., 632 N.W. 2d 560, 571-72 (Minn. 2001).  The Minnesota state district court opined:

> In Engvall v. Soo Line Railroad, the Minnesota Supreme Court ruled that while the Locomotive Inspection Act ("LIA") preempts common law causes of action that impose a different standard of care, common law actions with the federal regulations itself as the standard of care are not preempted.  632 N.W. 2d 560, 571-72 (Minn. 2001).  This Court can find no meaningful reason why the ruling in Engvall, regarding LIA violations, should not be applied with equal force to the

---

manufacturers of the railcars; (3) strict liability; (4) property damage; (5) private nuisance; (6) public nuisance; (7) trespass; (8) engaging in abnormally dangerous activity; (9) breach of numerous federal standards giving rise to negligence per se; (10) intentional infliction of emotional distress; (11) emotional distress; (12) violations of North Dakota statute and regulations; (13) violations of Minnesota statutes and regulations; (14) res ipsa loquitur; (15) loss of consortium on behalf of the decedent's wife; (16) loss of consortium on behalf of the decedent's parents; and (17) wrongful death.

FRSA violations outlined in the Grabinger complaint as far as the construction and maintenance claims are concerned.

 See In re: The Soo Line Co. Derailment of January 18, 2002 in Minot N.D., File No. MC 04-007726 (Fourth Judicial District Dec. 19, 2005), Order on Motion to Dismiss and Motion for Summary Judgment on the Issue of Federal Preemption, p. 16.   Finally, the Minnesota state district court found that those claims which were unrelated to a specific regulation (Category IV) were not preempted.

The Court finds that the portion of the Minnesota state district court order which addresses the issue of negligent inspection to be persuasive.  It is clear that the Minnesota state district court relied upon the Eighth Circuit case of Scottsbluff in reaching this portion of its decision.  However, the portions of the order which conclude that the plaintiffs claims alleging violations of federal regulations  are not preempted appears to be in conflict with this Court's interpretation of federal case law.   See Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 357-58 (2000) (holding the determination of whether state law is preempted by federal law does not concern an examination of the compliance with  federal regulations).

The Court recognizes that the Minnesota state district court was faced with what this Court views as contradictory opinions from the Minnesota State Supreme Court and the United States Supreme Court.  Compare Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 357-58 (2000) with Engvall v. Soo Line R.R. Co., 632 N.W.2d 560 (Minn. 2001).  On one hand, the Minnesota Supreme Court has held that claims seeking to impose a state law standard of care on a railroad are preempted, but that claims seeking to hold a railroad responsible for the alleged violation of a federal standard of care are not preempted.  See Engvall, 632 N.W.2d 560, 571.  On the other hand, the United States Supreme Court and other federal courts have held that the determination of whether

federal law has preempted a state law cause of action is not dependent upon the compliance or non-compliance with a federal regulation.  See Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 357-58 (2000); Kalan Enter., LLC v. BNSF Ry. Co., 05-cv-1326 (JMR/RLE), 2006 WL 348340, *2 (D. Minn. Feb. 14, 2006).  One possible explanation for this difference is the fact that Minnesota law recognizes the violation of a statutes or regulation as negligence per se.  Anderson v. State of Minn. Dep't of Natural Res., 693 N.W. 2d 181, 189-90 (Minn. 2005) (defining negligence per se as "a form of ordinary negligence that results from violation of a statute").

The Minnesota state district court did not address the "exclusive authority" given to the Secretary of Transportation to impose civil penalties and request injunctions for violations of the railroad safety regulations.  See 49 U.S.C. § 20111(a); see also 40 C.F.R. Part 209.

### C.    CP RAIL'S MOTION TO DISMISS

Turning to the motion pending before this Court, CP Rail asserts that all of the Plaintiffs' claims are preempted by federal regulation.  CP Rail characterizes the Plaintiffs' negligence claims as consisting of four categories:  (1) negligent inspection claims; (2) negligent construction and maintenance claims; (3) negligent training claims; and (4) negligent operation claims.  CP Rail directs the Court's attention to numerous regulations which it asserts cover each of the Plaintiffs' negligence claims.[5]  CP Rail also asserts that the Plaintiffs' claims of negligence per se, strict

---

[5]CP Rail cites to the following federal regulations and statutes as to the (1) negligent inspection claims:  49 C.F.R. §§ 215.9(a)-(b), 215.11(a)-(b), 215.13(a)-(c) & App. D, 213.7(b)(1)-(b)(2), 213.233(a)-(c), 213.237(a)-(c), 213.241(a)-(c); (2) negligent construction and maintenance claims:  49 C.F.R. §§213.113; 213.115; 213.119(a)-(c); 213.121(a)-(c), (f); 215.123; 215.12; (3) negligent training claims: 49 C.F.R. § 213.7; 213.119(g); and (4) negligent operation claims:  49 C.F.R. § 213.9; 213.113(Notes A to D); 1721.101; 173.314; 173.315; 174.200; 174.14; and 49 U.S.C. § 5125(a).

liability and intentional infliction of emotional distress are also preempted, or in the alternative, are either not recognized by North Dakota law or fail to state a claim.

The Plaintiffs' contend that none of their causes of action are preempted. The Plaintiffs also assert that United States Supreme Court and Eighth Circuit case law required compliance with applicable regulations before such regulations are deemed to carry preemptive force.

## 1.      INSPECTION CLAIMS

As to the negligent inspection claims, the Eighth Circuit has clearly held that such claims are preempted by the FRSA.  See Scottsbluff, 416 F.3d 787, 794 (2005).  The Scottsbluff decision is dispositive and indistinguishable.  The Plaintiffs attempt to distinguish the Scottsbluff decision by asserting that compliance with federal regulations is necessary for a regulation to have preemptive force.  The Plaintiffs' arguments regarding compliance are contrary to Supreme Court law, which specifically holds that compliance is not a part of the preemption analysis.  Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 357-58 (2000) ( holding the determination of whether state law is preempted by federal law does not concern an examination of the compliance with or the adequacy of the federal regulation); see also Kalan Enter., LLC v. BNSF Ry. Co., 05-cv-1326 (JMR/RLE), 2006 WL 348340, *2 (D. Minn. Feb. 14, 2006) (rejecting plaintiff's "compliance" theory of preemption and finding neither the United States Supreme Court nor the Eighth Circuit Court of Appeals precedent to require railroads to prove FRA compliance before allowing state law preemption); Ouellette v. Union Tank Car Co., 902 F. Supp. 5, (D. Mass. 1995) (finding the FRSA's preemption language does not differentiate between instances of compliance and non-compliance).  Simply stated, it is clear that neither the United States Supreme Court nor the Eighth Circuit require railroads to prove

18

compliance with federal regulations before allowing preemption of state law claims.  As a result, this Court expressly finds that the plaintiffs' negligent inspection claims are preempted by the FRSA and must be dismissed.

## 2.        CONSTRUCTION AND MAINTENANCE CLAIMS

The negligent construction and maintenance claims are likewise covered by federal regulations.  The issues of bolt tightness,[6] cracked joint bars,[7] restressing, adjusting or destressing as to CWR rail,[8] rail anchoring,[9] and defective track conditions[10] are all covered by federal regulations.  The Plaintiffs assert that because 49 C.F.R. § 213.119 does not prescribe any actual standards for the construction and maintenance of CWR rail it does not carry any preemptive effect. The Eighth Circuit in Scottsbluff rejected such an assertion and held that "a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter."  Scottsbluff, 416 F.3d 787, 794 (8th Cir. 2005).  Just as for the negligent inspection

---

[6]"Each joint bar shall be held in position by track bolts tightened to allow the joint bar to firmly support the abutting rail ends and to allow longitudinal movement of the rail in the joint to accommodate expansion and contraction due to temperature variations."  49 C.F.R. § 213.121(f).

[7]"If a joint bar is cracked, broken, or because of wear allow excessive vertical movement of either rail when all bolts are tight, it shall be replaced."  49 C.F.R. § 213.121(b).  "If a joint bar is cracked or broken between the middle two bolt holes it shall be replaced."  49 C.F.R.  § 213.121(c).

[8]Railroads with CWR are required to "have in effect and comply with written procedures which address . . . adjustment . . . of CWR, and a training program for the application of those procedures."  49 C.F.R. § 213.119.

[9]Railroad are required to have written procedures addressing "rail anchoring or fastening requirements that will provide sufficient restraint to limit longitudinal rail and crosstie movement to the extent practical."  49 C.F.R. § 213.119(b).

[10]Each rail joint "shall be of a structurally sound design and dimensions for the rail on which it is applied." 49 C.F.R. § 213.121(a).  Other sections address the limitations on the length and mismatches between the ends of rail joints and analyze when defects require attention and mandate the appropriate remedies for such defects.  49 C.F.R. §§ 213.115, 213.113.

claims in <u>Scottsbluff</u>, the FRSA's regulations are clearly intended to prevent negligent construction and maintenance.

The Plaintiffs also attempt to distinguish the regulations by asserting that the regulations do not cover some of their specific allegations of negligence.  For example, the Plaintiffs assert that the regulations do not prescribe the box anchoring patterns to be used.  Again, as the Eighth Circuit has held, the regulations need not set forth in minute detail each action a railroad must take.  Rather, the regulations must substantially subsume a particular subject matter.  <u>See</u> <u>Scottsbluff</u>, 416 F.3d 787, 794 (8th Cir. 2005).   The Court expressly finds that the Plaintiffs' construction and maintenance claims are preempted by federal regulation and that such claims must be dismissed.

### 3.    TRAINING CLAIMS

The Plaintiffs' claims asserting negligence in training are also covered by the FRSA.  The regulations set forth the training of track inspectors[11] and maintenance training.[12]  Just as for the negligent inspection claims, the FRSA covers the area of training.  The Court expressly finds that the Plaintiffs' negligent training claims are preempted by federal regulation and that such claims must be dismissed.

---

[11]Section 213.7 sets forth the qualifications a track inspector must meet, including having at least one year of experience in railroad track inspection or a combination of experience in track inspection and training from a course in track inspection or from a college level educational program related to track inspection.  49 C.F.R. § 213.7

[12]"Each track owner with track constructed of CWR shall have in effect and comply with written procedures which address the installation, adjustment, maintenance, and inspection of CWR, and a training program for the application of those procedures."  49 C.F.R. § 213.119.  "The track owner shall have in effect a comprehensive training program for the application of these written CWR procedures, with provisions for periodic re-training, for those individuals designated under § 213.7 of this part as qualified to supervise the installation, adjustment, and maintenance of CWR track and to perform inspections of CWR track."  49 C.F.R. § 213.119(g).

### 4. **OPERATION CLAIMS**

The Plaintiffs' claims of inadequate or negligent operation claims are also covered by the federal regulations. Federal regulations cover the areas of maximum allowable speed[13] and the transportation of hazardous materials.[14] The Court finds that the Plaintiffs' negligent operation claims are covered by federal regulation and that such claims are preempted.

### 5. **NEGLIGENCE PER SE**

The Plaintiffs have also alleged a claim of negligence per se. It is clear that North Dakota law does not recognize a claim for negligence per se. Under North Dakota law, "[t]he violation of a statutory duty is evidence of negligence and not negligence per se." Kimball v. Landeis, 652 N.W. 2d 330, 336 (N.D. 2002). The Eighth Circuit reached the same conclusion in Scottsbluff. 416 F. 3d 787, 795 (8th Cir. 2005) (concluding that the violation of a regulation or statute is generally not recognized as negligence per se under Nebraska law and affirmed the district court's dismissal of the negligence per se claims). Thus, the Court finds that the Plaintiffs' claims of negligence per se must be dismissed for failure to state a claim.

---

[13]Section 213.9 sets fort the maximum allowable speed for operating trains based on track type and train type. 49 C.F.R. § 213.9.

[14]The regulations provide detailed requirements for the transportation of hazardous materials. 49 C.F.R. § § 172.101 (anhydrous ammonia listed as a hazardous materials) 173.314 (requirements for compressed gases in tank cars and multi-unit tank cars), 173.315 (requirements for compresses gases in cargo tanks and portable tanks), 174.200 (regulations governing labeling, handling and shipment of anhydrous ammonia), 172.101 (prohibiting the transportation by rail of certain hazardous materials).

6.      **STRICT LIABILITY CLAIMS**

As to the Plaintiffs' strict liability claims, the Court finds that such claims must also be dismissed.  It is clear North Dakota has not yet decided whether to adopt a cause of action for strict liability for ultrahazardous or abnormally dangerous activities.  See Ehlis v. Shire Richwood, Inc., 233 F. Supp. 2d 1189, 1191 (D. N.D. 2002); Wirth v. Mayrath Indus., 278 N.W.2d 789, 792-93 (N.D. 1979)(declining to adopt Restatement (Second) Torts § § 519 and 520).

In Scottsbluff, the Eighth Circuit was faced with a similar strict liability claim.  416 F.3d 787, 796.  The Eighth Circuit looked to Nebraska law and found that Nebraska had not yet decided whether to adopt a cause of action of strict liability for ultrahazardous or abnormally dangerous activities.  The Eighth Circuit noted that the Supreme Court of Nebraska has "consistently declined to reach the question of strict liability when an insufficient evidentiary basis exist[ed] for concluding that a particular activity is ultrahazardous."  Id.  Further, the Eighth Circuit opined:

> Plaintiffs' bare allegation that the transport of benzene by rail through populated areas is ultahazardous in similarly bereft of evidentiary support.  We predict that the Supreme Court of Nebraska would decline to reach the issue of strict liability based upon the evidence set forth in this case.

Id.

The Court finds that the state of North Dakota law is similar to that of Nebraska.  The North Dakota Supreme Court has given no indication that it would adopt strict liability for ultrahazardous or abnormally dangerous activities, nor has it indicated it would consider the transportation of anhydrous ammonia by rail to be an ultrahazardous activity.[15]  The Court can find nothing which

---

[15]The Court finds it unnecessary to discuss whether CP Rail would benefit from the exception to strict liability for common carriers.

distinguishes this case from the <u>Scottsbluff</u> decision, which was issued in early August 2005.  Thus, the Court finds that the Plaintiffs' strict liability claims fail as a matter of law.

**7.       <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS</u>**

As to the Plaintiffs' claims of intentional infliction of emotional distress, such claims are also preempted.  The parties agree that to establish a claim for intentional infliction of emotional distress, a plaintiff must prove, among other elements, that the defendant's conduct was "extreme and outrageous."  In their brief in opposition to the motion to dismiss, Plaintiffs set forth the type of evidence they would expect to present at trial to establish "extreme and outrageous" conduct:

> A jury can conclude that the conduct here – including complete disregard of the safety of the track surrounding the population of Minot, as evidence by numerous FRA citations, which lead to the catastrophic derailment – constitutes outrageous conduct.  Defendants knew their joint bars were susceptible to cracking, but did not change their maintenance practices; further, they knew from the 1994 Burlington derailment . . . that any derailment causing loss of life or sustained injuries had a powerful impact on the surrounding communities.

<u>See</u> Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, p. 31 (Docket No. 243).

The Plaintiffs' characterization of the evidence to support their intentional infliction of emotional distress claim is simply a restatement of their evidence to support the other negligence claims.  To support an intentional infliction of emotional distress claim, the Plaintiffs will inevitably present the same evidence that would have formed the basis for the preempted claims.  The Plaintiffs have made no allegations apart and separate from the basis of the preempted claims, upon which to base their claims of intentional infliction of emotional distress.  To allow the intentional infliction of emotional distress claim to proceed, would defeat the purpose of federal preemption and invariably lead to juries reaching inconsistent conclusions as to what constitutes extreme and

23

outrageous conduct. Such inconsistencies necessarily create varying standards of care throughout the country. This is the precise result federal preemption law is designed to prevent. The Court finds that the Plaintiffs' claims of intentional infliction of emotional distress are preempted by federal law and must be dismissed.

## 8. NUISANCE AND TRESPASS CLAIMS

The Plaintiffs' claims of private nuisance, public nuisance, and trespass to land are also preempted. Such claims are additional reiterations of the Plaintiff's general claims of negligence. Just as with the claim of intentional infliction of emotional distress, the Plaintiffs will inevitably present the same evidence that would have formed the basis for the preempted negligence claims. It is clear that such claims are covered by the broad regulatory power of the FRSA and are preempted by federal law. As the Court has previously stated, to allow state law claims to proceed would defeat the purpose of federal preemption and lead to varying standards of care throughout the country. The Court finds that the Plaintiffs' claims of private nuisance, public nuisance, and trespass to land are preempted by federal law and must be dismissed.

## 9. EXCLUSIVE ENFORCEMENT

Even if the Court were to conclude that the Plaintiffs' claims were not preempted by the FRSA, to allow such claims to go forward would undoubtedly run afoul of the exclusive enforcement provision of the FRSA. In other words, even if this Court concluded (as the Minnesota state district court did) that a state cause of action exists to enforce a federal standard of care, it is

clear that Congress has granted the exclusive authority to resolve such claims to the Secretary of Transportation.

> The Secretary of Transportation has exclusive authority –
>
> (1)    to impose and compromise a civil penalty for a violations of a railroad safety regulation prescribed or order issued by the Secretary;
>
> (2)    except as provided in section 20113 of this section, to request an injunction for a violation of a railroad safety regulation prescribed or order issued by the Secretary; and
>
> (3)    to recommend appropriate action be taken under section 20112(a) of this title.

49 U.S.C. § 20111(a).  The exception set forth in 49 U.S.C. § 20113 allows state government agencies to exercise the same authority as the Secretary of Transportation if the federal government fails to act promptly.  As a result, the Court finds that Congress has clearly granted the Secretary of Transportation the power to enforce allegations of violations of the FRSA.  The Court finds that the Plaintiffs' claims, if not preempted, must, nevertheless, be dismissed.


### 10.    <u>HARSH IMPACT</u>

While the Court is convinced the dismissal of Plaintiffs' claims is inevitable under the current state of federal law in the Eighth Circuit, this Court recognizes that such a result is unduly harsh and leaves the Plaintiffs with essentially no remedy for this tragic accident.  The federal district court in Massachusetts succinctly summarized this dilemma:

> While federal preemption often means that there is no remedy to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress. By pervasively legislating the field of railroad safety, Congress demonstrated its intent to create uniform national standards and to preempt state regulation of railroads.  If state common law tort claims were permitted to proceed despite this Congressional intent, on the ground that the purported tortfeasor had in some way allegedly failed to comply with the federal standards, then manufacturers would inevitably by subjected to varying interpretation of the federal regulations in the different states.  Inevitably, these tort actions would generate precisely those

inconsistencies in railroad safety standards that Congressional action was intended to avoid.

Ouelette v. Union Tank Car Co., 902. F. Supp. 5, 10 (D. Mass. 1995)(internal citation omitted).

The Federal Railroad Safety Act passed by Congress in 1970 has ensured national uniformity of railroad safety regulations, but it has also absolved railroads from any common law liability for failure to comply with the safety regulations.  It is clear that Congress determined that there was a need for national uniformity and a need to adopt standard federal regulations to protect the public rather than allow for varied and inconsistent state law remedies.  State law claims have been preempted by federal law.  While the Federal Railroad Safety Act  does provide for civil penalties to be imposed on non-compliant railroads, the legislation fails to provide any method to make injured parties whole and, in fact, closes every available door  and remedy for injured parties.  As a result, the judicial system is left with a law that is inherently unfair to innocent bystanders and property owners who may be injured by the negligent actions of railroad companies.

This Court is not the first to recognize the harsh impact on injured individuals.  As Justice Ginsburg of the United States Supreme Court argued in her dissent in Norfolk So.Ry. Co. v. Shanklin, the displacement of state negligence law "with no substantive federal standard of conduct to fill the void" creates an outcome that "defies common sense and sound policy."  Norfolk So. Ry. Co. v. Shanklin, 529 U.S. 344, 360 (2000).  Other federal district courts throughout the country have struggled with the harshness of decisions such as this.  However, it is the province of Congress, not the judicial branch, to address this inequity.  Common sense and fundamental concepts of fairness and justice demand that there should be a remedy for the wrong, but there is none under the current

state of federal law.  Such an unfair and inequitable result should be addressed through legislative action.

Finally, the Court has referenced several times in this order that the Minnesota state district courts have interpreted Minnesota state case law to allow claims such as those set forth by the Plaintiffs in this case to proceed.  The Court notes that the statute of limitations for a personal injury action in Minnesota is six years.  See Minn. Stat. § 541.05.  This accident occurred on January 18, 2002.  Until such time as the conflict between federal law and Minnesota state law is resolved, and perhaps even after, there appears to be no bar to the Plaintiffs re-filing their lawsuit in Minnesota state court.

## IV.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion to Dismiss. (Docket No. 238).  The Court finds that the claims asserted in the Plaintiff's complaint are preempted by the Federal Railroad Safety Act.  This finding is in accord with the most recent pronouncement of the Eighth Circuit Court of Appeals in the case of In re Derailment Cases, 416 F.3d 787 (8th Cir. 2005), issued on August 2, 2005.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 6th day of March, 2006.

Daniel L. Hovland, Chief Judge
United States District Court

27